UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RIVER OAKS CONDOMINIUM ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 4:12-CV-01880-SPM |
| SHAUN DONOVAN, Secretary, Department of Housing and Urban Development, | ) ) ) ) ) | |
| Defendant and Counterclaimant. | ) ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the defendant's motion for partial summary judgment on its counterclaim for declaratory judgment (Doc. 15), the plaintiff's motion to dismiss the defendant's counterclaims for breach of contract and for declaratory judgment (Doc. 20), and the plaintiff's motion for partial summary judgment on its breach of contract claim (Doc. 24). For the reasons set forth below, the Court will deny the plaintiff's motion for partial summary judgment on its claim, deny the plaintiff's motion to dismiss the defendant's counterclaims, and grant the defendant's motion for partial summary judgment on its declaratory judgment counterclaim.[1]

## I.   FACTUAL BACKGROUND

This cause of action concerns a dispute over condominium association assessments and fees related to a condominium unit located at 4128 Riverfront Court in Florissant, Missouri (the

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. (Doc. 7).

1

"Unit").  The Unit is located within the River Oaks Condominium and is part of Plaintiff River Oaks Condominium Association (the "Association").  Under Missouri's Condominium Property Act, Mo. Rev. Stat. §§ 448.005 *et seq.*, and the Declaration of Condominium for River Oaks Condominiums (the "Declaration"), the Association is authorized to impose assessments against unit owners for common expenses and to levy late fees and interest for non-payment of assessments.  *See* Mo. Rev. Stat. §§ 448.3-115, 448.3-102.1(11).  In addition, the Association has a lien on a unit for any assessment levied against that unit from the time the assessment becomes due and goes unpaid.  Mo. Rev. Stat. § 448.3-116.1.

On May 3, 2006, Tracy N. Snipes, the then owner of the Unit, granted U.S. Bank, N.A., ("U.S. Bank") a purchase money Deed of Trust for the Unit, which was recorded on May 18, 2006.  On the same day, Ms. Snipes executed a Second Deed of Trust to St. Louis Department of Planning as Grantee, which was recorded on May 18, 2006.  Ms. Snipes later defaulted on the U.S. Bank deed of trust loan, and on January 31, 2011, U.S. Bank completed a foreclosure on the deed of trust loan.  This foreclosure terminated Ms. Snipes' ownership and caused U.S. Bank to become the owner of the Unit via a Trustee's Deed Under Sale.  On July 1, 2011, U.S. Bank conveyed the Unit to the Department of Housing and Urban Development ("HUD"), which now owns the Unit.

On March 15, 2012, the Association's attorney issued to HUD's agent a "Payoff Memorandum" seeking the following:

    Assessments
        (February 2011-March 2012 @ $154.00/month)        $ 2,156.00
    Six Months of Assessments Prior to Foreclosure
        (August 2010-January 2011@ 154.00/month)       $   924.00
    Recording Costs
        (January 18, 2011)        $     27.44
        (April 13, 2011)        $     24.00
        (March 2012 – Estimated cost of release)       $     30.75

| | |
|---|---|
| Cost to File Petition | $      82.19 |
| Cost to Obtain Copies of Recorded Documents | $        7.45 |
| Cost to File Petition  (January 13, 2011) | $      81.00 |
| Execution Costs  (April 13, 2011) | $      39.00 |
| Publication Cost  (June 30, 2011) | $    250.00 |
| Late Fees  (February 2011-March 2012 @ $30.00/month) | $    420.00 |
| Interest  (@ 18% per annum on Assessments only) | $    242.55 |
| Attorney's Fees  (includes costs to release the liens) | $ 1,854.50 |
| TOTAL | $ 6,056.69 |

(Doc. 17-6). On March 20, 2012, HUD issued payment to the Association in the amount of $2,853.32; it is unclear how this amount was calculated. In an email on April 9, a representative of HUD stated that it had paid the assessment fees from foreclosure going forward, which was what it was legally obligated to pay. In an email the same day, counsel for the Association sent HUD an email stating the following:

> Missouri's Condominium Property Act, Section 448.3-116, Mo. Rev. Stat., allows the Association limited lien priority for six months of assessments prior to the date of foreclosure. For your reference, this limited priority is the same limited priority described in Colorado's CRS Section 38-33.3-316. Thus, we disagree that HUD has paid all of which it is legally obligated to pay.
>
> Until we can establish a meeting of the minds on this amount, the Association will not be releasing its liens against 4128 Riverfront Drive.

(Doc. 17-8). On April 10, an agent of HUD responded that subsection 2(2) of Section 448.3-116 established that the mortgage had priority over the assessment lien, that the Missouri statute did not create a super-priority lien over the foreclosed mortgage, that the lien was removed in the foreclosure process, and that release of the lien was not necessary. On the same day, counsel for the Association responded that even under HUD's interpretation of the statute, HUD's payment

3

had not covered the full amount owed, and that it would begin foreclosure proceedings if the balance owed was not paid. Between April 10 and April 27, 2012, the attorney for the Association received telephone calls from various representatives of HUD and from others insisting that the payment amount was correct. On May 4, 2012, the Association returned HUD's offered payment because there was no meeting of the minds.

On May 24, 2012, the Association received a letter from HUD explaining its position on Section 448.3-116.2 of Missouri's Condominium Property Act. On July 17, 2012, the Association and a representative of HUD discussed their difference of opinion as to the language of the statute and agreed to begin settlement negotiations. On July 17, 2012, the Association sent HUD an amended Payoff Memorandum that included a request for three months of pre-foreclosure assessments. On August 14, 2012, a representative of HUD mailed a letter to the Association explaining HUD's position on Section 448.3-116.2, without payment or any offer of settlement.

On August 30, 2012, the Association filed a Petition in the Circuit Court of St. Louis County against HUD for "Breach of Contract for Delinquent Condominium Assessments," and HUD removed the case to this court due to the presence of a United States government defendant. In its Petition, the Association alleges that under the Declaration, HUD owes and has refused to pay $5,820.54, itemized as follows:

| | |
|---|---|
| Assessments    (July 2011-August 2012 @ $154.00/month) | $ 2,156.00 |
| Remaining Assessments    (September-December 2012 @ $154/month) | $   616.00 |
| Recording Cost | $     82.19 |
| Cost to Obtain Copies of Recorded Documents | $     23.85 |
| Cost to File Petition | $   162.00 |
| Execution Costs | $     39.00 |
| Publication Cost | $   250.00 |
| Late Fees | $   420.00 |

4

|  |  |  |
|---|---|---|
| Credits |  | $ (154.00) |
| Interest (@ 18% per annum) |  | $    231.00 |
| Attorney's Fees |  | $ 1,994.50 |
|  | TOTAL | $ 5,820.54 |

(Doc. 2, ¶ 6). The Association also seeks assessments and charges through the date of judgment, as well as reasonable attorney's fees. The Association does not seek pre-foreclosure assessments in its Petition; however, it specifically asserts that it does not waive its statutory lien rights under Section 448.3-116 of the Missouri Uniform Condominium Act to collect unpaid assessments, late fees, interest, or other charges enforceable as assessments due prior to July 2011.

On March 11, 2013, HUD filed a Second Amended Counterclaim Complaint, asserting counterclaims against the Association for breach of contract and for declaratory judgment. In its breach of contract claim, HUD alleges that the Association breached an implied term of the contract between the parties by refusing to accept HUD's March 20, 2012 proffer to pay assessments and fees. HUD asserts that as a result of this breach of contract, HUD has been unable to sell the Unit and has incurred legal fees and costs for maintaining the Unit. In its Declaratory Judgment claim, HUD seeks a declaration that, as a matter of law, there exist no priority liens for any unpaid assessments that became delinquent before the January 31, 2011 foreclosure; that the Association has no legal right to demand payment from HUD to satisfy or release any claimed priority liens that attached to the Unit before January 31, 2011; and that the Association has no legal right to demand payment from HUD of any late fees, fines, penalties, or attorney's fees or collection fees attributable to attempts to satisfy liens that attached before January 31, 2011.

The Association has moved to dismiss both of HUD's counterclaims and has moved for partial summary judgment on its own breach of contract claim. HUD has moved for partial summary judgment on its declaratory judgment counterclaim.

## II.  DISCUSSION

### A.  THE ASSOCIATION'S MOTION TO DISMISS HUD'S COUNTERCLAIMS

The Association has moved to dismiss HUD's breach of contract counterclaim and its declaratory judgment counterclaim for failure to state a claim.

#### 1. Legal Standard for Motion to Dismiss

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citing *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001)). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need to contain detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Huang v. Gateway Hotel Holdings*, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

#### 2. Motion to Dismiss HUD's Counterclaim for Breach of Contract

The elements of a breach of contract action under Missouri law are "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract;

(3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Missouri Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010).

The Association argues that HUD has failed to state a claim for breach of contract because HUD "alleges that the Association breached an implied contract term by not accepting payment that was offered to the Association" yet "fails to identify the contract in which such a term should be implied." (Doc. 20, at 1-2, ¶¶ 2-3). The Court disagrees. In its Second Amended Counterclaim Complaint, HUD specifically alleged the existence of the contract on which its claim is based, stating, "There is a contract between the parties for payment of assessments by unit owners, which contract is formed by the Declaration for the River Oaks Condominiums and Missouri law." (Doc. 13, ¶ 12). Indeed, this is the same contract that forms the basis for the Association's breach of contract claim. (Doc. 2, ¶¶ 2, 5-6). HUD specifically asserted that a term was implied by law in "the contract between the parties," which was clearly a reference to the contract described earlier in its Second Amended Counterclaim Complaint. (Doc. 13, ¶ 21). It also specifically alleged that that term required the Association to accept and credit to a homeowner's account all proffered assessment payments calculated to be legally owed under the Declaration and Missouri law.

HUD also alleges the remaining elements of a breach of contract claim: it alleges that it tendered performance by issuing payment to the Association; that the Association breached the contract by refusing to accept payment in full; and that HUD has been damaged due to the breach because it has been unable to sell the Unit and thus has incurred legal fees and costs for maintaining the Unit. (Doc. 13, ¶¶ 22-23). Thus, Plaintiffs have stated a cause of action for breach of contract under Missouri law. The Association's motion to dismiss HUD's counterclaim for breach of contract will be denied.

7

### 3.  Motion to Dismiss HUD's Declaratory Judgment Counterclaim

The Association moves to dismiss HUD's Counterclaim for Declaratory Judgment for failure to state a claim on the ground that there is no actual controversy present, as required by the Declaratory Judgment Act.

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides in relevant part that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The phrase "case of actual controversy" in section 2201 "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126, 127 S. Ct. 764, 166 L.Ed.2d 604 (2007).  To constitute a "case of actual controversy," the dispute must be "'definite and concrete, touching the legal relations of parties having adverse legal interests.'"  *Id.* at 127 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41, 57 S. Ct. 461, 81 L.Ed. 617 (1937)).  In addition, it must be "'real and substantial' and 'admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.*  "'Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L.Ed. 826 (1941)).

The Association maintains that because it has not brought suit to collect unpaid assessments under its lien, there is no actual controversy regarding whether it has a statutory lien right under Section 448.3-116 to collect unpaid assessment amounts from dates prior to

foreclosure.  The Association also emphasizes that it has not sought to foreclose on the lien and indeed cannot foreclose against government-owned property, citing *Secretary of HUD v. Sky Meadow Association*, 117 F. Supp. 2d 970, 980 (C.D. Cal. 2000).  HUD argues that it has alleged sufficient facts to establish an actual case of controversy based on the alleged cloud on title to the Unit.

Accepting as true the allegations in HUD's Second Amended Counterclaim Complaint, the Association has repeatedly represented to HUD that there exist pre-foreclosure assessment liens that survived the U.S. Bank foreclosure, and the Association has refused to accept payment from HUD on the ground that it did not include payment for pre-foreclosure assessments.  This has caused HUD to be unable to sell the property to its contracted buyer because it cannot pay all assessments properly due, and as a consequence HUD has incurred legal fees and costs for maintaining the property.  The Court finds that these facts show an actual controversy in this case that is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune,* 549 U.S. at 127.  There is a concrete, substantial controversy between the parties over whether pre-foreclosure liens exist on the Unit and whether HUD is obligated to pay those amounts in order to provide clear title to its contracted buyer.[2]  A decree on the question of the pre-foreclosure liens would provide specific relief and end this controversy.  Thus, the Association's motion will be denied.

### B. HUD's Motion for Partial Summary Judgment on Its Declaratory Judgment Counterclaim

HUD has moved for partial summary judgment on its declaratory judgment counterclaim.  It seeks a ruling that there are no liens on the Unit in favor of the Association for any unpaid

---

[2] Even if the Association cannot foreclose on its lien against HUD, the Association's assertion that it maintains a lien produces a cloud on the title to the Unit; HUD alleges that this has already had an impact on HUD's ability to sell the property.

9

assessments that became delinquent before the January 31, 2011 issuance of the Trustee's Deed Under Sale to U.S. Bank.  HUD also seeks a ruling that Plaintiff has no legal right to demand payment from Defendant to satisfy or release any such claimed priority liens, including any demand for payment of any late fees, fines, penalties, or attorney's fees or collection fees attributable to any attempts to collect payment to satisfy or release any such claimed priority liens.

In the Association's response, the Association argues that there is no actual case of controversy; it does not present any arguments regarding the merits of HUD's counterclaim.

### 1.  Legal Standard for Motion for Summary Judgment

The Court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party always bears the initial responsibility of informing the court of the basis of its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the moving party discharges this burden, the nonmoving party must set forth affirmative evidence from which a jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The nonmoving party may not rest on the allegations in its pleadings, but must set forth specific facts showing that a genuine issue of material fact exists. *Id.* at 256.  In considering a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in the nonmovant's favor. *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004).

### 2. Existence of an Actual Case of Controversy

The Association again argues that there is no actual case of controversy here because the Association is not attempting to, and cannot, foreclose against the government on its statutory lien; the Association is seeking assessments only from July 2011 going forward (plus assessments that HUD has agreed to pay); interpretation of Missouri's lien priority statute would serve no useful purpose as to the claims in the case; and there is no nexus between the interpretation of the Missouri's lien priority statute and the parties' contract claims.

For its argument, the Association relies primarily on *Public Service Commission of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 73 S.Ct. 236 (1952). *Wycoff* is inapposite. In *Wycoff*, a company requested a declaratory judgment that its transport of goods between points within and outside of Utah constituted interstate commerce, arguing that it needed to guard against possibility that the state would prevent the company from operating within Utah. *Id.* at 239-41. The Court found no actual controversy was present, emphasizing that the dispute had not matured to the point where the Court could see "what, if any, concrete controversy [would] develop," that the proposed decree would not "end the controversy," and that it was not apparent that the declaratory judgment action "would serve a useful purpose." *Id.* at 245-46.

Here, the controversy has already developed. The undisputed evidence produced by HUD shows that the Association repeatedly informed HUD that HUD must pay pre-foreclosure assessments before the Association will release its liens on the Unit. The Association offers evidence that the parties engaged in negotiations regarding the proper interpretation of the lien priority statute and that, at one point, the Association sent an amended Payoff Memorandum that included only three months of pre-foreclosure assessments. However, there is no evidence to show that the Association was ever willing, or is now willing, to release the liens on the Unit

11

absent payment of at least some pre-foreclosure assessments. Indeed, in its Petition, the Association specifically asserts that it "does not waive its statutory lien rights under Section 448.3-116 of the Missouri Uniform Condominium Act to collect unpaid assessments, late fees, interest, or other charges enforceable as assessments due prior to July 2011." (Doc. 2, ¶ 7. An order addressing the pre-foreclosure liens would "end the controversy" over whether there exist any liens on the Unit and would serve the useful purpose of permitting HUD to provide good, clear, and marketable title to a potential buyer.

In addition, the Court agrees with HUD that a determination of the Association's pre-foreclosure lien rights is relevant to a determination of whether the Association breached its duty of good faith when it refused to accept HUD's offer of payment. The Association suggests that payment was not refused on the ground that it did not include pre-foreclosure assessments, emphasizing that its attorney stated in an email message that the offered payment was not sufficient even with the pre-foreclosure amounts excluded. However, even when the evidence is viewed in the light most favorable to the Association, it is clear that HUD's unwillingness to pay pre-foreclosure amounts was at least one of the reasons that the Association found HUD's payment insufficient and refused to accept it. On April 9, the Association informed HUD that "Section 448.3-116, Mo. Rev. Stat. allows the Association limited lien priority for six months of assessments prior to the date of foreclosure. . . . Thus, we disagree that HUD has paid all of which it is legally obligated to pay." (Doc. 17-8). In addition, the affidavit produced by the Association shows that the parties' negotiations over the next several months were largely related to their interpretation of the lien priority statute.

Finally, the Court notes that despite the Association's repeated statements that it is not seeking pre-foreclosure assessments in this action, the damages calculation it submitted with its

12

motion for partial summary judgment on its breach of contract claim appears to include pre-foreclosure assessments from January 2011. A resolution of the legal issue raised in the declaratory judgment action is relevant to a determination of whether the Association is entitled to such damages.

In sum, the Court finds that there is an actual case of controversy here, and it will consider the merits of HUD's counterclaim.

### 3. Existence of Pre-Foreclosure Liens

The facts relevant to HUD's declaratory judgment counterclaim are undisputed. On May 18, 2006, U.S. Bank's purchase money deed of trust on the Unit was recorded. On January 31, 2011, U.S. Bank completed a foreclosure of the purchase money deed of trust loan, causing U.S. Bank to become the owner of the Unit. On July 1, 2011, U.S. Bank conveyed the Unit to HUD. There was no refinancing of the Unit subsequent to the purchase money deed of trust. The only second mortgage taken out on the Unit before the foreclosure was a Second Deed of Trust to St. Louis Department of Planning, which was granted and recorded on the same day as the U.S. Bank purchase money deed of trust.

In correspondence with HUD, the Association has claimed that it has liens against the Unit for six months of unpaid assessments for August 2010 through January 2011. It is undisputed that assessments by the Association are due on the first day of each month and are delinquent if not received at the close of business on the tenth day of the month. Under Missouri law, a monthly condominium assessment lien arises automatically on the day the assessment becomes due and goes unpaid. *See* Mo. Rev. Stat. § 448.3-116.1; *Carroll v. Oak Hall Assocs., L.P.*, 898 S.W.2d 603, 607 (Mo. Ct. App. 1995). Thus, the assessment liens for unpaid

assessments for August 2010 through January 2011 arose between August 10, 2010, and January 10, 2011.

The legal question raised by HUD's motion for declaratory judgment is whether, under Missouri law, the foreclosure of the purchase money deed of trust on January 31, 2011, extinguished the Association's liens for these unpaid assessments. As a general rule, "The proper foreclosure of a senior deed of trust extinguishes deeds of trust and other interest junior to it.'" *Fields v. Millsap & Singer, P.C.*, 295 S.W.3d 567, 570 (Mo. Ct. App. 2009) (quoting *Golden Delta Enters., L.L.C. v. U.S. Bank*, 213 S.W.3d 171, 175 (Mo. Ct. App. 2007)). However, Missouri has a statutory scheme that specifically addresses the priority status accorded to condominium association assessment liens and deeds of trust. Section 448.3-116.2, Mo. Rev. Stat., states, in relevant part:

> A lien pursuant to this section is prior to all other liens and encumbrances on a unit except:
>
> (1) Liens and encumbrances recorded before the recordation of the declaration;
>
> (2) A mortgage and deed of trust for the purchase of a unit recorded before the date on which the assessment sought to be enforced became delinquent;
>
> (3) Liens for real estate taxes and other governmental assessments or charges against the unit;
>
> (4) Except for delinquent assessments or fines, up to a maximum of six months' assessments or fines, which are due prior to any subsequent refinancing of a unit or for any subsequent second mortgage interest.

Under this statute, all association assessment liens have broad, super-priority status over all other liens and encumbrances, unless one of the listed exceptions applies. *See Bd. of Managers of Parkway Towers Condo. Ass'n, Inc. v. Trish Carcopa*, No. SC92805, ---S.W.3d ----, 2013 WL 3716657, at *3 (Mo. July 16, 2013) (stating that section 448.3-116.2 "provides that the

14

condominium association's lien for an assessment has priority over all other liens except in four circumstances").

HUD argues that exception (2) applies here, and the Court agrees. It is undisputed that U.S. Bank's purchase money deed of trust was recorded in 2006, before the date on which the Association's pre-foreclosure liens became delinquent in 2010 and 2011. Thus, because HUD's purchase money deed of trust was recorded before the date on which the assessments sought to be enforced became delinquent, exception (2) plainly applies, and the assessment lien does not have any special statutory priority over U.S. Bank's purchase money deed of trust. Thus, U.S. Bank's January 31, 2011, foreclosure on its mortgage and deed of trust extinguished any liens associated with assessments that became due prior to that date. *See Fields*, 295 S.W.3d at 570.

It appears from HUD's brief and from the correspondence between the parties that the Association has taken the position that section (4) is an exception to the three exceptions in sections 448.3-116.2 (1) through (3). The Association apparently took the position that section (4) applies here and gives super-priority status to liens for up to six months of the Association's pre-foreclosure assessments. The Court finds that section (4) is inapplicable. Section (4) applies where either (a) there was a pending assessment lien at the time a unit owner refinanced, or (b) there was a pending assessment lien at the time a subsequent second mortgage was created. *See* Mo. Rev. Stat. § 448.3-116.2(4); *Parkway Towers,* 2013 WL 3716657, at *3 ("The clear language of section 448.3-116.2(4) contemplates a situation when there is a pending assessment lien at the time the unit owner refinances."). Here, the unit owner never refinanced. The only second mortgage interest on the Unit was a second deed of trust that was granted and recorded in May 2006 (on the same day as the deed of trust to U.S. Bank); even if that constitutes a "subsequent second mortgage interest," the assessments at issue were not due prior to the

15

creation of that interest and were not pending as of the time that 2006 mortgage interest was created. Thus, section (4) is not applicable.

In sum, the Court finds that HUD has established as a matter of law that any assessment liens on the Unit that arose due to unpaid assessments that became delinquent before January 31, 2011, were not entitled to super-priority status over U.S. Bank's deed of trust and were extinguished by the foreclosure that occurred on January 31, 2011. There are no genuine issues of material fact with regard to that issue. Thus, the Court finds that HUD is entitled to summary judgment on its declaratory judgment counterclaim. There are no liens on the Unit in favor of the Association for any unpaid assessments that became delinquent before January 31, 2011, or for any fees or costs attributable to those amounts or attempts to collect those amounts.

### C. THE ASSOCIATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT FOR DELINQUENT CONDOMINIUM ASSESSMENTS CLAIM

The Association has moved for partial summary judgment on its claim for Breach of Contract for Delinquent Condominium Assessments. It contends that there are no genuine issues of material fact regarding its claim that HUD owes the Association $7,330.31 in unpaid assessments, late fees, and interest. That amount includes assessments for January 2011 through December of 2013, as well as associated late fees and interest. (Doc. 24-2, at pp. 9-10). It does not include attorney's fees; the Association states that if its motion is granted, the sole remaining issue for the Court to decide would be the amount of attorney's fees to be awarded.

At the outset, the Court notes that although the Association's claim is titled "Breach of Contract," the Association does not address the elements of a breach of contract claim in its brief. Instead, the Association asserts simply that (1) under Missouri law and the Declaration, it is authorized to impose assessments, late fees, and interest against unit owners; and (2) the defendant owes $7,330.31 in such assessments, fees, and charges and has not paid them. HUD

16

does not appear to dispute that the Association may bring such an action, and the Court notes that under the Missouri Condominium Property Act, "Any right or obligation declared by sections 448.1-101 to 448.4-120 is enforceable by judicial proceeding." Mo. Rev. Stat. § 448.1-114.2. *See also Bitting v. Central Point Condo. Bd. of Managers*, 970 S.W.2d 898, 900-01 (Mo. Ct. App. 1998) (considering a counterclaim brought by a condominium association against an owner for a personal judgment for past due assessments).

HUD does not dispute that the Association has the authority to impose assessments, late fees of $30.00 for non-payment of assessments, and interest at a rate of 18% per annum for non-payment of assessments, and it does not dispute that each unit owner is personally liable for assessments made when it is the owner of a unit. However, HUD disputes that it owes (1) any amount that is based on assessment amounts that were due prior to February 2011, and (2) any amount that is based on assessment amounts that were due after it attempted to tender payment to the Association in March 2012.

After review of the briefs and exhibits submitted by the parties, the Court finds that the Association has failed to establish that, as a matter of law, it is entitled to an award of $7,330.31 in assessments, late fees, and interest charges, and that genuine issues of material fact exist as to the amount owed.

First, the exhibits submitted by the Association indicate that some portion of the $7,330.31 number includes an assessment (and related late fees and interest charges) for January 2011. (Doc. 24-2, at pp. 9-10). The Association has not established any basis for a finding that HUD is personally liable for the January 2011 assessment, which was due before either HUD or U.S. Bank became the owner of the unit.[3] As the Court has already found, any lien on the Unit

---

[3] HUD has accepted liability for assessments for February through June 2011, when U.S. Bank

17

for the January 2011 assessment arose by January 10, 2011, and was extinguished by the January 31, 2011 foreclosure. Moreover, the Court does not find that HUD has accepted liability for the January 2011 assessment. HUD did state, in its Response to Plaintiff's Statement of Uncontroverted Material Facts, that "Defendant has accepted liability for payment of all regular monthly assessments from January 2011 forward which have been accurately, properly and legally imposed and subject to the [Association]'s duty of good faith in imposing monthly assessments." (Doc. 40, ¶ 11). However, given HUD's statement in its memorandum in opposition to Plaintiff's motion that HUD "denies owing any part of Plaintiff's total of $7,330.31 if the amount is for assessments, fees, or costs related to liens existing prior to February 2011," combined with HUD's consistent and vigorous opposition to any suggestion that it is liable for pre-foreclosure assessments, the only reasonable reading of Defendant's statement is that it has accepted liability for payment of assessments *after* January 2011. Thus, the Association has not established that it is entitled, as a matter of law, to any portion of the $7,330.31 that is related to the January 2011 assessment.

HUD also disputes that the Association is entitled to any amounts that have accrued since March 20, 2012, the date that HUD tendered payment to the Association. HUD contends that although the Association has the authority to impose assessments, late fees, and interest, it has an implied contractual duty of good faith, as well as a statutorily mandated duty of good faith, in performing those functions. *See* Mo. Rev. Stat. § 448.1-113 ("Every contact or duty governed by sections 448.1-101 to 448.4-120 imposes an obligation of good faith in its performance or enforcement."). HUD asserts that any amounts that accrued after March 20, 2012, accrued by

---

was the owner of the Unit. *See* HUD's Second Amended Counterclaim Complaint, Doc. 13, ¶ 14 ("As an owner of a unit in the Association, [HUD] is willing to pay . . . for any HOA assessments that accrued while U.S. Bank, N.A. was the owner [of the unit]").

18

virtue of the Association's improper refusal of HUD's offer of payment and its failure to abide by its statutory and contractual duties of good faith, and that therefore HUD does not owe such amounts.  In effect, it appears that HUD is arguing that the Association's refusal to accept payment constituted a material breach of the Association's duty of good faith and thereby excused HUD from further performance.  Under Missouri law, "A material breach in a contract may excuse the other [party's] performance." *Pepsi Midamerica v. Harris*, 232 S.W.3d 648, 655 (Mo. Ct. App. 2007) (quoting *Campbell v. Shaw*, 947 S.W.2d 128, 132 (Mo. Ct. App. 1997)). Moreover, "[w]hether a breach is material is a question of fact." *L.L. Lewis Constr., L.L.C. v. Adrian*, 142 S.W.3d 255, 260 (Mo. Ct. App. 2004).

The Court finds that there are genuine issues of material fact related to whether the Association materially breached its contractual and/or statutory duties of good faith and whether HUD is liable for post-March 2012 assessment amounts and fees.  HUD has produced evidence that it tendered a $2,853.32 payment to the Association on March 20, 2012 and that the payment was returned.  It was returned at least in part because of the Association's position that HUD owed the Association for pre-foreclosure assessments—a position that the Court has found plainly incorrect under the language of the relevant statute.  Moreover, rather than applying the payment to the post-foreclosure amounts for which it was offered, the Association returned the payment and continued to charge late fees and interest on both pre- and post-foreclosure amounts.  The Court finds that this evidence creates genuine issues of material fact related to whether the Association breached its contractual and statutory duties of good faith, including whether HUD's offer of payment in March 2012 was adequate to cover its legal obligations, the reasons why the Association refused the payment, which (if any) of the amounts charged after March 2012 were attributable to a wrongful refusal to accept payment, and whether the

Association properly imposed late fees and interest charges on amounts HUD had previously attempted to pay.

In light of the above issues, the Court finds that the Association has failed to establish that there are no genuine issues of material fact regarding the amount HUD owes to the Association. Therefore, the Association's motion for partial summary judgment will be denied.

### III.    CONCLUSION

Based on the foregoing,

**IT IS HEREBY ORDERED** that HUD's Motion for Partial Summary Judgment on its Declaratory Judgment Counterclaim (Doc. 15) is **GRANTED.**

**IT IS HEREBY ORDERED** that the Association's Motion to Dismiss HUD's Breach of Contract and Declaratory Judgment Counterclaims (Doc. 20) is **DENIED**.

**IT IS FURTHER ORDERED** that the Association's Motion for Partial Summary Judgment on its Breach of Contract Claim (Doc. 24) is **DENIED**.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of August, 2013.